UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL ERICKSEN,

    Plaintiff,

                                      CASE NO. 15-CV-10088
v.                              HONORABLE GEORGE CARAM STEEH

J. DOE #1 et al.,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 13)

This *Bivens* federal civil rights action arises out of plaintiff Daniel Ericksen's arrest after marijuana and drug paraphernalia were found in the trunk of his vehicle at the United States and Canadian border at the Blue Water Bridge in Port Huron, Michigan. Plaintiff alleges that the search of his vehicle and his arrest at the border crossing violated his Fourth Amendment rights. Defendants are four named Customs and Border Protection ("CBP") officers and two unnamed defendants. The named defendants have filed a motion to dismiss, or in the alternative, to stay this action pending state criminal drug charges against plaintiff arising out of the search and seizure at issue here. Oral argument was heard on June 15, 2015. Because the complaint fails to plausibly allege facts that would make the border search exception inapplicable, and defendant's conduct is protected by qualified immunity, defendants' motion to dismiss shall be granted.

### I. Background

In considering defendant's motion to dismiss, the court has carefully considered the allegations in the complaint as well as the opinion of the circuit court affirming the denial

-1-

of his motion to suppress. Although the general rule is that when a party moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court may only consider the matters in the pleadings, matters of public record may also be taken into account. *Kostrzewa v. City of Troy*, 247 F.3d 633, 644 (6th Cir. 2001) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997).

On June 22, 2012, plaintiff was en route to a summer camp in Michigan when he missed his turn and inadvertently ended up at the international border crossing to Canada at the Blue Water Bridge in Port Huron, Michigan. Plaintiff told Michigan Department of Transportation employees that he wished to turn around and not to cross the border into Canada. He was given a laminated card to present at an inspection booth. The card was prepared by CBP and stated on the front:

> You are being allowed to turn around without traveling to Canada. Please present this card, along with your identification to an open CBP inspection booth prior to departing. Thank you.

The back of the card stated:

> All persons, baggage, and merchandise arriving in the Customs territory of the United States or from places outside thereof are liable to inspection and search by a Customs official.

The laminated card allowed plaintiff to turn around without proceeding to Canada and paying a toll each way. When plaintiff presented at the primary inspection booth at the international border, a CBP agent searched his vehicle and discovered marijuana and drug paraphernalia in a backpack in his trunk. A canine also alerted to drugs. Plaintiff was arrested, and state authorities charged him with misdemeanor drug offenses of possession of marijuana and possession of drug paraphernalia. Plaintiff sought to suppress the evidence in his state criminal proceedings, and the state judge denied his motion. Plaintiff

appealed the ruling, and the circuit court affirmed. Defendants seek dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and on the basis of qualified immunity. In the alternative, defendants argue this matter should be stayed pending the state criminal proceedings.

## II. Rule 12(b)(6) Dismissal Standard

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. "[N]aked assertions devoid of further factual enhancement" are insufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (*quoting Bell Atlantic*, 550 U.S. at 555) (citations and quotations omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Id.* (*citing Bell Atlantic*, 550 U.S. at 555).

### III. Analysis

**A.     Plaintiff Has Failed to Allege a Constitutional Violation**

The Supreme Court has recognized that "[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004). Routine searches at the border do not require a warrant, probable cause, or reasonable suspicion. *Id.* (citing *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). The law is well settled that "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States v. Ramsey*, 431 U.S. 606, 616 (1977). Congress "has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant, in order to regulate the collection of duties and to prevent the introduction of contraband into this country." *Montoya de Hernandez*, 473 U.S. at 537. Warrantless suspicionless searches are permissible at the border and also at their "functional equivalents." *Almeida-Sanchez v. United States*, 413 U.S. 266, 272-73 (1973).

In addition to Supreme Court precedent recognizing the border search exception, the government argues statutory authority, including 19 U.S.C. § 1581(a), also supports suspionless border searches. Courts interpreting § 1581(a) have held that it grants general authorization for border searches without probable cause, a warrant, or reasonable suspicion. *United States v. Boumelhem*, 339 F.3d 414, 419-20 (6th Cir. 2003) (collecting cases discussing § 1581(a)).

Plaintiff argues that the border search exception, as established by Supreme Court precedent and federal statutes, should not apply to him because he had not crossed and was not attempting to cross the border. Plaintiff's argument must be rejected in light of controlling Sixth Circuit precedent. The Sixth Circuit addressed a closely related issue in *United States v. Humphries*, 308 F. App'x 892 (6th Cir. 2009), where a motorist on his way to a concert in Detroit, inadvertently found himself stopped near the Detroit-Windsor Tunnel leading to Canada, and customs agents conducting searches of outbound vehicles discovered a small amount of marijuana on the defendant as well as a gun in his car. *Id.* at 893-94. In his criminal case, defendant sought to suppress the evidence seized on the grounds that he was not yet to the border crossing when his vehicle was intercepted and searched. *Id.* at 895. The district court found that even if inadvertently, defendant had entered an area where cars were stopped in line to exit the country, and that CBP agents were permissibly conducting searches of outbound vehicles. *Id.* The Sixth Circuit affirmed, finding that defendant's vehicle was close enough to the border or its functional equivalent to fall within the border search exception, and it was of no consequence that defendant had not actually crossed the border. *Id.* at 896.

In this case, it is undisputed that plaintiff had passed closer to the international border than in *Humphries.* Moreover, plaintiff's argument that *Humphries* is distinguishable because it was an outbound search case is not well taken. The fact that plaintiff here was in an inbound, not an outbound lane, makes application of the border search exception more justifiable not less so, as the United States obviously has a greater interest in policing the border in order to protect against the smuggling of illegal narcotics or other contraband into the country, as opposed to preventing such contraband from exiting the country. Given his

location at the international border, customs agents could permissibly search his vehicle without probable cause, a warrant, or reasonable suspicion. *United States v. Flores-Montano,* 541 U.S. 149, 152-53 (2004).

Plaintiff argues that customs agents required reasonable suspicion to stop him because he had not actually crossed the border. In support of this theory, plaintiff relies upon case law discussing the "extended border search" doctrine which allows customs agents to conduct a search away from the border where the "dual requirements of reasonable certainty of a recent border crossing and reasonable suspicion of criminal activity are satisfied." *United States v. Stewart*, 729 F.3d 517, 525 (6th Cir. 2013). The rationale for the "reasonable suspicion" standard in extended border search cases is that an individual's expectation of privacy increases once she has left the actual entry point to the United States. *Id. at* 525. Moreover, the sovereign's interest in maintaining the integrity of the border diminishes when customs officials search an individual who has left the border and entered the interior of the country. The rationale supporting the reasonable suspicion standard required under the extended border search doctrine does not apply here where plaintiff had no reasonable expectation of privacy at the international border crossing, but rather should have expected to have his privacy intruded upon. *United States v. Cotterman*, 637 F.3d 1068, 1077 (9th Cir. 2011).

For the same reason, plaintiff's reliance on *United States v. Ortiz*, 422 U.S. 891, 896-97 (1975), where the Court held that officers may not search vehicles at traffic checkpoints removed from the border and its functional equivalents without consent or probable cause, and *Almeida-Sanchez v. United States*, 413 U.S. 266, 273-74 (1973), where the court held a search invalid where a vehicle was stopped by a roving border patrol twenty miles from

the border without probable cause, is misplaced as neither case involved a routine search at an international border crossing where no probable cause or even reasonable suspicion is required. Plaintiff also argues the search violated his Fourth Amendment rights under the Court's decision in *City of Indianapolis v. Edmond*, 531 U.S. 32, 47-48 (2000), which held that suspicionless vehicle searches at highway drug interdiction checkpoints are unconstitutional, but the Court stressed that "[o]ur holding [] does not affect the validity of border searches or searches at places like airports and government buildings, where the need for such measures to ensure public safety can be particularly acute."

Plaintiff also argues that the canine search violated his Fourth Amendment rights because marijuana use can be legal in Michigan under the medical-marijuana exception. The Supreme Court has held that a canine sniff does not constitute a search within the meaning of the Fourth Amendment as it does not unreasonably intrude upon a person's reasonable expectation of privacy. *United States v. Place*, 462 U.S. 696, 706-07 (1983); *see also United States v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998). Plaintiff's argument that marijuana use can be legal in Michigan when prescribed by a medical care provider has no bearing on the constitutionality of a canine sniff. This is an argument better made in his state misdemeanor proceedings, but it has no bearing on his federal civil rights action pending here.

Plaintiff also argues that subjecting turnaround motorists to routine border searches serves no legitimate government interest. To the contrary, the policy furthers the government's significant interest in protecting the integrity of the border by ensuring that customs agents can carry out their duties without the confusion that would be caused by requiring agents to distinguish between motorists who meant to cross the border and those

claiming to have arrived at the border of the United States and Canada by mistake. As the government aptly notes in its brief, customs agents are charged with interdicting those individuals seeking to smuggle aliens or contraband, or planning to harm Americans, from entering the country, and their ability to do so will be compromised if they are required to ascertain the intent of every passing motorist as to whether they arrived at the border by their own volition or in error.

Plaintiff argues the border search exception should not apply to him since he did not intend to leave the country. The government responds that once plaintiff took the exit for Canada and entered the bridge, albeit accidentally, there was no way for customs agents at the inspection booth to know that he had not just crossed the border other than the laminated card that he was presented. If motorists entering the United States could avoid inspection by use of a laminated card, incentives would encourage those seeking to smuggle contraband, avoid immigration laws, or harm this country or its citizens, to retain a laminated card from a prior border entry, or to fabricate the laminated card. Such would be an unworkable policy fraught with potential abuse, compromising the ability of customs agents to properly police the border. Customs agents cannot be required to treat travelers claiming to have arrived at the international border crossing inadvertently differently from those presenting normally as this would inhibit the ability of customs agents to expeditiously carry out their duties of securing the border.

Plaintiff argues international travel is required for the border search exception to apply. One of the policy reasons supporting the border search exception, however, is the "recognition of the difficulty involved in effectively policing our national boundaries." *United States v. Hill*, 430 F.2d 129, 131 (5th Cir.1970). Given the sovereign's strong interest in

maintaining the integrity of the border, and recognizing the herculean nature of the task involved when faced with the growing international drug trade and the smuggling of illegal aliens among other national problems, the government's ability to police the border cannot be undermined by adopting the two-track system plaintiff proposes for searching those claiming to present inadvertently at an international border checkpoint and those presenting in the usual fashion. Such a system would deprive federal officers of the certainty that the routine administration of their obligation to search inbound motorists will not subject them to potential liability for alleged Fourth Amendment violations. In sum, defendants committed no Fourth Amendment violation when they conducted a routine search of plaintiff's vehicle and arrested him, when he presented at an international border checkpoint carrying marijuana and drug paraphernalia in his vehicle's trunk.

### B.   Defendants are entitled to qualified immunity

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Hence, immunity questions should be resolved as early in the litigation as possible. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Qualified immunity gives "ample room for mistaken judgments by protecting all but the plainly incompetent, and those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks and citations omitted). Once the defense of qualified immunity is raised, the plaintiff bears the burden of proving that the defendant is not entitled

to qualified immunity. *Rodriguez v. Passinault,* 637 F.3d 675, 689 (6th Cir. 2011). In resolving the issue of qualified immunity, courts are required to engage in a two-step decisional process: (1) when considering the issue under Federal Rule of Civil Procedure 12(b)(6), whether the facts as plaintiff has alleged show that a constitutional violation has occurred; and (2) whether the constitutional right was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232 (citation omitted). A district court enjoys "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

For the reasons discussed above, the court has already determined that plaintiff has failed to allege that a constitutional violation occurred because customs agents were performing a routine search at the international border. In addition, defendants are entitled to qualified immunity because plaintiff had no clearly established right to be exempt from a routine border search because he found himself at the border crossing by mistake. "The relevant, dispositive inquiry in determining whether a right was clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (internal quotation marks and citations omitted). A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. A case directly on point is not required, as some constitutional violations are so obvious that a "materially similar case" is unnecessary for the right to be clearly established. *Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013). The Sixth Circuit has explained that in determining whether a right is clearly established, courts should first look to decisions of the Supreme Court, then to authority within the Sixth Circuit, then

to decisions of other courts of appeals, and ask whether those precedents "placed the constitutional question beyond debate." *Id.* (internal quotation marks and citations omitted). Here, plaintiff had no clearly established Fourth Amendment right to be free from a routine border search at a primary inspection booth at an international border crossing by virtue of the fact that he was a turnaround motorist who did not intend to leave the country. Plaintiff presented himself at the international border crossing, regardless of his subjective intentions about whether or not he wished to be there. There is abundant case law holding that searches of persons and vehicles are permissible at border crossings without reasonable suspicion, and the *Humphries* case held that such border searches pass constitutional muster even where the motorist presenting at the border crossing was not entering the United States from a foreign country. Accordingly, defendants are entitled to qualified immunity. Having found that defendants are entitled to dismissal because plaintiff has failed to allege a Fourth Amendment violation, and also because the doctrine of qualified immunity shields them from suit, the court does not reach the issue of whether this action should be stayed pending the state criminal proceedings.

## IV. Conclusion

For the reasons set forth above, defendants' motion to dismiss (Doc. 13) is GRANTED, and defendants' alternative request to stay the action is DENIED AS MOOT.

**IT IS SO ORDERED**.

Dated: July 1, 2015

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 1, 2015, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---